UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
Miami Division
**Case Number: 13-23115-CIV-MARTINEZ-MCALILEY**

SECURITIES AND EXCHANGE
COMMISSION,

                      Plaintiff,

v.

BERNARD H. BUTTS, JR., *et al*.,

                      Defendants,

_____

**ANSWER OF MARGARET A. HERING
TO PLAINTIFF'S COMPLAINT**

Defendant Margaret A. Hering ("Hering"), by and through undersigned counsel, answer the Complaint filed by Plaintiff Securities and Exchange Commission ("SEC") as follows:

**I.  SUMMARY**

1.      From at least April 2012 through the present, Florida attorney Bernard H. Butts, Jr., Fotios Geivelis Jr., who used the alias Frank Anastasio, and his company Worldwide Funding, and sales agents Anisky, Banner and his company Express Commercial, and Baggs obtained millions of dollars by defrauding investors through the offer and sale of investments in a fictitious prime bank instrument trading program.

**Answer:  Denied.  Hering denies the allegations contained in this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

2.      Geivelis and Butts paid sales agents including Anisky, Banner, Express Commercial, and Baggs to lure investors through the Internet, telephone, and personal contact into the scheme with promises of extraordinary profits. As part of the scheme, defendants told investors that an investment of between USD $60,000 and $90,000 would generate profits of at least €6,660,000 (Euro) within 15 to 45 business days and continue to earn profits of approximately 14% per week for 40 to 42 weeks.

**Answer:  Denied.  Hering denies the allegations contained in this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

3.      Defendants falsely promised when an investor's funds were deposited into Butts' attorney trust account, Butts would not release the funds until he received proof from the receiving bank that a €10,000,000 Standby Letter of Credit ("SBLC") had *been* deposited into a securities trading program which was to generate the profits for the investors.

**Answer:  Denied.  Hering denies all allegations within this paragraph to the extent that they relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

4.      Defendants did not disclose that instead of using the funds to obtain SBLCs, they misappropriated investors' funds with Geivelis and Butts each taking approximately 45% and paying approximately 10% to the sales agents. Contrary to the defendants' representations, the acquisition of the SBLCs never occurred, no loans were obtained, and

no promised returns were earned in a trading program or paid to investors. Over more than a year, the defendants obtained at least $3.5 million from approximately forty-five investors nationwide and in foreign countries by making false and misleading statements or omitting material facts in the offer and sale of these unregistered securities.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph to the extent that they relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

5.     To keep the scheme going, Geivelis and Butts also made lulling statements to investors, representing that the trading program was successful and that payments to investors were imminent.

**Answer:   Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

6.     Through these actions, Geivelis, Worldwide Funding, Butts, Anisky, Banner, Express Commercial, and Baggs violated, and unless restrained and enjoined will continue to violate, the antifraud provisions of Section 17(a) of the Securities Act of 1933 ("Securities Act"), 15 U.S.C. § 77q(a), Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. § 78j(b), and Rule 10b-5, 17 C.F.R. § 240.10b-5.

**Answer:   Denied.   The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.   To the extent that this**

**paragraph contains allegations of fact, Hering denies the allegations as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

7.      In addition, Geivelis, Worldwide Funding, Butts, Anisky, Banner, Express Commercial, and Baggs offered and sold securities in the form of investment contracts, which were not registered with the SEC at the time they were sold, in violation of the securities registration provisions of Section 5(a) and (c) of the Securities Act, 15 U.S.C. § 77e(a) and (c), and unless restrained and enjoined will continue to violate these securities registration provisions.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact, Hering denies the allegations as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

8.      Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs also acted as broker-dealers in violation of the registration provisions of Section 15(a)(1) of the Exchange Act, 15 U.S.C. § 78o(a)(1), and unless restrained and enjoined will continue to violate the broker-dealer registration provisions.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact, Hering denies the allegations as they do not**

**relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

9.     Relief defendants Bernard H. Butts, Jr. PA, Butts Holding Corporation, Global Worldwide Funding Ventures, Inc., Margaret A. Hering, and PW Consulting Group LLC received investors' funds to which they had no legitimate claim and were unjustly enriched.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.   To the extent that this paragraph contains allegations of fact, Hering denies the allegations that relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

## II.     JURISDICTION AND VENUE

10.     The SEC brings this action under Section 20(b) of the Securities Act, 15 U.S.C. § 77t(b) and Section 21(d) and (e) of the Exchange Act, 15 U.S.C. § 78u(d) and (e), to restrain and enjoin the defendants from engaging in the acts, practices and courses of business described in this Complaint, and acts, practices and courses of business of similar purport and object. The Commission seeks permanent injunctions, disgorgement of ill-gotten gains derived from the conduct alleged in the Complaint plus prejudgment interest, and third-tier civil penalties under Section 20(d) of the Securities Act, 15 U.S.C. § 77t(d) and Section 21(d)(3) of the Exchange Act, 15 U.S.C. § 78u(d)(3).

**Answer:   Denied.   The allegations contained within this paragraph merely describe the nature of the action and do not require a response.   To the extent any allegations are made against Hering within this paragraph, such allegations are denied.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

11.     This Court has jurisdiction under Section 22(a) of the Securities Act, 15 U.S.C. § 77v(a) and Section 27 of the Exchange Act, 15 U.S.C. § 78aa. The defendants, directly or indirectly, made use of the means and instrumentalities of interstate commerce or of the mails, in connection with the acts, practices and courses of business alleged in the Complaint.

**Answer:   Denied.   The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.   To the extent that this paragraph contains allegations of fact, Hering denies the allegations that relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

12.     Certain of the acts, practices, and courses of business constituting violations of law alleged in the Complaint occurred within the Southern District of Florida. In addition, Butts, Banner, and Anisky reside in the Southern District of Florida. Express Commercial conducts business from the Southern District of Florida.

**Answer:   Denied.   The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.   To the extent that this**

paragraph contains allegations of fact, Hering denies the allegations as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.

### III. DEFENDANTS

13.     Defendant Bernard H. Butts, Jr., born in 1941, is an attorney admitted to practice law in Florida. He resides and transacted business in Miami, Florida. He entered into numerous escrow agreements with Worldwide Funding, Geivelis and investors from his offices in Miami, Florida.

**Answer: Admitted in part, denied in part. Hering admits that Butts was born in 1941 and is admitted to practice law in the State of Florida. Hering is without knowledge or information sufficient to form a belief as to the truth of the remaining allegations contained within this paragraph, and they are therefore denied by Hering**

14.     Defendant Fotios Geivelis, Jr., born in 1979, is a resident of Tampa, Florida and used the name "Frank Anastasio" in dealing with investors. Geivelis transacted business in Miami, Florida by entering into numerous escrow agreements with Butts and the investors related to the transactions at issue in this case.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her.**

15.     Defendant Worldwide Funding III Limited LLC is a Florida limited liability company organized on March 1, 2012, with its principal place of business in Fort Myers, Florida. Worldwide Funding transacted business in Miami, Florida by

entering into numerous escrow agreements with Butts and the investors related to the transactions at issue in this case. Geivelis is the sole managing member and owner of Worldwide Funding LLC.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

16.     Defendant Douglas J. Anisky, born in 1957, is a resident of Delray Beach, Florida. He is a sales agent that finds investors for Worldwide Funding and receives transaction based commissions.  He transacted business in Miami, Florida by participating in telephone conference calls among investors, Geivelis, Butts and himself, and receiving commissions from Butts' trust account in Miami, Florida.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.**

17.     Defendant Sidney Banner, born in 1927, is a resident of Delray Beach, Florida. He is a sales agent that finds investors for Worldwide Funding and other investment programs and receives transaction-based commissions. He transacted business in Miami, Florida by arranging and participating in telephone conference calls among investors, Geivelis, Butts and himself, and receiving commissions from Butts' trust account in Miami, Florida.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or**

**information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

18.    Defendant Express Commercial Capital LLC is a Florida limited liability company that conducts business from Delray Beach, Florida. Express Commercial is a broker that found investors for Worldwide Funding and other investment programs and receives transaction-based commissions from Butts' trust account in Miami, Florida. Banner and his wife are managing members of Express Commercial. Express Commercial, through Banner, transacted business in Miami, Florida by arranging and participating in telephone conference calls among investors, Geivelis, Butts and himself, and receiving commissions from Butts' trust account in Miami, Florida.

**Answer:    Denied.    Hering denies the allegations contained within this paragraph as they do not relate to her.    Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

19.    Defendant James Baggs, born in 1942, is a resident of Lake Forest, California. Baggs is a sales agent that finds investors for Worldwide Funding and other investment programs and receives transaction-based commissions from a bank account held in the name of Bernard H. Butts Jr. P.A. in Miami, Florida.

**Answer:    Denied.    Hering denies the allegations contained within this paragraph as they do not relate to her.    Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

20.     Relief defendant Bernard H. Butts Jr. P.A. is a Florida corporation. It does business as "The Law Offices of Butts & Mertz" and its principal place of business is in Miami, Florida. Butts is the owner of Butts PA.

**Answer:   Admitted.   Hering admits the allegations contained within this paragraph.**

21.     Relief defendant Butts Holding Corporation is a Florida corporation with a principal place of business in Miami, Florida. Butts is the president and only officer of Butts Holding.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

22.     Relief defendant Margaret A. Hering, age 70, is a resident of Miami, Florida and is Butts' wife.

**Answer:   Admitted.   Hering admits the allegations contained within this paragraph.**

23.     Relief defendant Global Worldwide Funding Ventures, Inc. is a Florida corporation with a principal place of business in Fort Meyers, Florida. Geivelis is the president and only officer of Global Ventures.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information**

**sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

24.     Relief defendant PW Consulting Group LLC is a Florida limited liability company with its principal place of business in Delray Beach, Florida. Anisky is the managing member of PW Consulting.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

### IV. OFFER AND SALE OF UNREGISTERED SECURITIES

25.     In March 2012, Geivelis formed Worldwide Funding with its principal office in Fort Myers, Florida.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

26.     In May 2012, Geivelis opened a bank account for Worldwide Funding with JPMorgan Chase Bank, N.A. ("Worldwide Chase account") in Midland Park, New Jersey, with an initial deposit of $40. The bank account statements were mailed to a house where Geivelis lived in Wyckoff, New Jersey until approximately April 2013, when Geivelis moved to Tampa, Florida. Geivelis was the sole signatory on the account and controlled the funds in the Worldwide Chase account.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

27.    Worldwide Funding has a website at www.worldwidefundingiii.com created by Geivelis, which states it is a "commercial funding brokerage and consulting firm."

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

28.    From in or about April 2012 and continuing to date, Worldwide Funding, Geivelis, and Butts as Geivelis' partner, and their sales agents: Anisky, Express Commercial, Banner and Baggs offered and sold securities in the form of investment contracts in a fraudulent prime bank scheme.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

29.    The investments contracts offered by the defendants were securities. The investment contracts required investors to invest between $60,000 and $90,000, which was transferred to Butts' attorney trust account for the benefit of Worldwide Funding. Geivelis and Worldwide Funding were to use the investors' funds to pay banking charges to lease

Standby Letters of Credit ("SBLC") in the amount of E10,000,000 from a banking group in Europe. Geivelis and Worldwide were to leverage the SBLC to invest in a securities trading program that was to generate a rate of return of approximately 14% per week. Investors' profits were to come from the efforts of Geivelis, Worldwide Funding, and the trading program.

**Answer: Denied. The allegations contained within this paragraph state a legal conclusion and therefore do not require a response. To the extent this paragraph contains allegations of fact that relate to Hering, the allegations are denied. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

30.    Worldwide Funding through Geivelis as its managing member, Butts, Anisky, Express Commercial through its managing member Banner, and Baggs communicated with investors through electronic mail ("email") and telephone calls. Worldwide Funding and Geivelis, and Express Commercial and Banner also have websites that offer the investments.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

31.    Since April 2012, Worldwide Funding, Geivelis and Butts also distributed offering materials to investors that described the investment, including

Worldwide Funding's Agreement, Escrow Agreement, Financial Service Agreement, Trading Agreement and Settlement Statements.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

32.    Worldwide Funding, Geivelis, and Butts represented in the offering materials and in conversations with investors that an investor paid $60,000 to $90,000 to Worldwide Funding for bank charges to lease an SBLC in the amount of E10,000,000 from a banking group in Europe. They also represented that the investor's funds were held in Butts PA's attorney trust account, and would not be released until delivery of the SBLC was confirmed by the receiving bank, Barclays Bank in the United Arab Emirates. In addition, they represented that they arranged for a third-party to transfer the SBLC to Barclays Bank, which would acknowledge receipt of the SBLC. They also represented the SBLC was used to acquire a loan, with the funds from the loan placed in a securities trading program that generated a return on investment of approximately 14% per week for approximately 42 weeks.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

33.     Worldwide Funding, Geivelis, and Butts used sales agents to solicit investors for the Worldwide Funding trading program and paid them approximately 10% of the investor's funds that were invested.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

34.     From at least April 2012 to present, Anisky offered Worldwide Funding's investment contracts to at least ten investors, communicated with investors and the other defendants through the Internet, emails or telephone calls, and received transaction based compensation from the sales made to investors, which was paid into the bank account of PW Consulting.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

35.     From at least January 2013 to the present, Express Commercial, Banner, and Baggs also offered Worldwide Funding's investment contracts to at least eleven investors, communicated with investors and the other defendants through the Internet, emails or telephone calls, and received transaction based compensation from their sales made to investors.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or**

**information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

36.    From April 2012 to date, Worldwide Funding, Geivelis, and Butts offered and sold Worldwide Funding's investment contracts to at least forty-five investors and received directly or indirectly approximately $3,687,701 from the sale of these investment contracts. The sales were made in Miami Florida when investors transferred their funds to Butts' attorney trust account.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

37.    No registration statement was filed with the SEC or in effect for the offer or sale of Worldwide Funding's securities by the defendants.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

### V. DEFENDANTS ENGAGED IN A SCHEME TO
### DEFRAUD INVESTORS

38.    Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs used an artifice, device or scheme to defraud investors by offering or selling investments in a fictitious trading program for prime bank instruments. Investors were lured into the scheme with the promise of €10 million non-recourse

loans to use for their business or humanitarian projects and extraordinary rate of return of approximately 14% per week from an international trading program. In fact, no Worldwide Funding trading program existed and the defendants did not obtain SBLCs to leverage in an international trading program to produce the tremendous returns promised by the defendants.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

39. Prime bank trading programs such as those offered by Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs are fictitious. The Securities Exchange Commission, the Federal Reserve Bank, the International Monetary Fund and numerous other federal and international authorities have all publicly denounced these bank instrument program frauds in easily obtainable information.

**Answer: Denied. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph, and they are therefore denied.**

40. Worldwide Funding and Geivelis engaged in deceptive acts in furtherance of the scheme by offering and selling investments in a fictitious trading program and by creating false Worldwide Funding offering materials and agreements that made it appear they were offering a real investment when they never acquired the

SBLCs or participated in the trading program as represented. The offering materials were just a device to obtain investor money for defendants' personal benefit. Worldwide Funding and Geivelis misappropriated investor funds and did not use them to pay banking fees to acquire SBLC.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

41.    Butts engaged in deceptive acts in furtherance of the scheme by offering and selling investments in a fictitious trading program, entering into the Escrow Agreements in which he agreed to only release the investors' funds after receiving proof that the bank had received the SBLC, and representing that he was not compensated for his work as an escrow agent. Contrary to his agreement, Butts released the investors' funds without proof that SBLCs were acquired. In addition, Butts misappropriated investors' funds by transferring approximately 45% to Worldwide and Geivelis, 45% to accounts for the benefit of Butts, and 10% to the sales agents as undisclosed compensation.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

42.    Anisky, Express Commercial, Banner, and Baggs engaged in deceptive acts in furtherance of the scheme by offering and selling investments in a fictitious

trading program, and receiving undisclosed compensation of approximately 10% of the investors' funds.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

43.   Although Worldwide Funding, Geivelis and Butts represented that investors' funds were to be used to pay bank charges to acquire the SBLC, they misappropriated the funds distributing them to Worldwide Funding's bank account for Geivelis' personal benefit, to various accounts controlled by Butts, to the sales agents and the relief defendants. **Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

44.   Butts paid Worldwide Funding and Geivelis approximately $1,883,375 into the  Worldwide Chase account ending in 2735 from investors' funds received into the Butts PA trust accounts.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

45.     Butts and Butts PA paid approximately $662,800 of investors' funds received into the Butts PA trust account to an account at Sabadell in the name of Bernard H. Butts PA ending in 9124.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

46.     Butts paid approximately $313,500 to Butts Holding's account at Wells Fargo Bank ending in 9981 from investors' funds received into the Butts PA trust accounts.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

47.     Butts paid approximately $417,000 to his Wells Fargo Bank account ending in 2779 from investors' funds received into the Butts PA trust accounts.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

48.     Butts paid approximately $104,000 to his JP Morgan Chase checking account ending in 9690 from investors' funds received into the Butts PA trust accounts.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

49.    Butts paid approximately $100,000 to his and Margaret Hering's Credit Suisse Bank accounts ending in 1139 or 2385.

**Answer:   Admitted.   Hering admits the allegations contained within this paragraph.**

50.    Butts paid approximately $25,000 to his HSBC Bank account ending in 3879 from investors' funds received into the Butts PA trust accounts.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

51.    Butts paid approximately $40,000 to his account with AETRS Cardmember Depository in New Delhi, India.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

52.    Butts paid approximately $24,960 to Global Ventures account at Chase ending in 9900 from investors' funds received into the Butts PA trust accounts.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

53. Butts paid Anisky approximately $86,768 in investors' funds to Anisky's company PW Consulting's Bank Atlantic account ending in 8107 from the Butts PA trust account.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

54. Butts paid Banner approximately $91,250 to Banner's company Express Commercial's account at Chase ending in 1386 from the Butts PA trust account.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

55. Butts paid Baggs approximately $4,970 to Baggs' company Capital Express from investors' funds received into the Butts PA trust account.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

56.    Geivelis and Butts acted with scienter because they knew that no Worldwide Funding trading program existed, because they misappropriated all of the investors' funds for their own personal benefit and did not use any investors' funds to obtain any SBLCs. Geivelis and Butts also knew that they had never completed a loan transaction or provided either the promised loan proceeds or return on investment back to the investor. Geivelis' knowledge is attributed to Worldwide Funding.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

57.    Anisky, Banner, and Baggs acted with scienter because they each knew, or were reckless in not knowing, that the prime bank instrument trading program did not exist because of the extraordinary and unrealistic returns they claimed were paid, when they had no substantive support for their statements. Banner's knowledge is attributed to Express Commercial.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

58.     The defendants used Internet websites, emails, telephone calls, and wire transfers in connection with the offer and sale of the investments in the fictitious Worldwide Funding trading program.

**Answer:  Denied.  Hering denies the allegations within this paragraph to the extent that they relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and therefore they are denied by Hering.**

## VI.  DEFENDANTS MADE FALSE AND MISLEADING STATEMENTS OR OMISSIONS OF MATERIAL FACT

59.     From at least April 2012 to the present, Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner and Baggs offered and sold the Worldwide Funding trading program to investors over the Internet, through emails and telephone calls, and received investors' funds into the Butts PA trust account through wire transfers.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

60.     Since April 2012, Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs distributed offering materials to investors which described the investment.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information**

**sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

61.     Since April 2012, Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs made false and misleading statements and omitted material facts in their offer or sale of investment contracts in Worldwide Funding's fictitious trading program.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

62.     Since April 2012, in conversations and emails with investors and offering materials, Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs described the Worldwide Funding trading program and represented among other things that the investor's funds of between $60,000 and $90,000 were used to acquire a SBLC from a banking group in Europe. An investor would receive an initial return of approximately €6.6 million Euros within 15 to 45 banking days.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

63.     In conference calls with investors that occurred since April 2012, Worldwide Funding, Geivelis, and Butts also represented that after the initial payout, an investor would receive a weekly return on investment of approximately 14% over the

next 40 to 42 weeks. Geivelis explained that the returns were generated by leveraging the face value of the SBLC and using the leveraged funds in a securities trading program. Butts confirmed these representations in the conference calls with investors. These same misrepresentations also appeared in Worldwide Funding's offering materials that Geivelis prepared and signed.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

64.    The defendants' material representations about the existence of the Worldwide Funding trading program were false and misleading because the trading program did not exist.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as to they relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and therefore they are denied by Hering.**

65.    Since April 2012, Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs represented in emails and conversations with investors that an investor's funds were safe and secure because they remained in Butts' attorney trust account until the SBLC was secured and validated.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information**

**sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

66.    Butts, Geivelis and Worldwide Funding also made similar misrepresentations about the safety and security of investor's funds in the Escrow Agreement they signed with the investor. In the Escrow Agreement, Butts, Geivelis, and Worldwide Funding represented that the investor's "Funds shall be held in escrow until Worldwide Funding . . . has performed per the contract between them and [investor], attached hereto and made a part hereof." They represented that Butts agreed "to act as escrow agent without compensation under this agreement and to disburse the Funds in accordance with the terms and conditions hereinafter set forth." They represented that Butts was interested in the transaction as the partner of Geivelis and Worldwide Funding. But they failed to disclose that Butts immediately withdrew approximately 45% of the investor's funds as his personal compensation.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

67.    In the Worldwide Funding Agreement signed by Geivelis on behalf of Worldwide Funding that was made part of the Escrow Agreement, Worldwide Funding, Geivelis and Butts represented that an investor's funds will be used "to pay certain bank charges of approximately USD $60,000.00 . . . for acquiring [an] instrument and delivering the instrument to the program providers trading account." They represented, "Upon authentication instrument provider will issue an MT-760 cash backed SBLC to

program providers account in Barclay's UAE. . The receiving bank will send a responsive SWIFT Wire transmission to sending bank acknowledging its receipt. . . In the event [the documents are] not authenticated and validated by the receiving bank and its Client\account beneficiary, then such funds shall in no event be released by the escrow agent's account.. . . The receiving bank must send a responsive SWIFT transmission to acknowledge it receipt of the same."

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

68.    Contrary to these representations of Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs in the Worldwide Funding Agreement and Escrow Agreement, or in conversations with investors, investors' funds were not safe and secure because Butts immediately released the funds to Worldwide Funding and Geivelis, himself, and the sales agents. No funds were used to acquire SBLC and Butts received no acknowledgement from the receiving bank that a SBLC was ever delivered.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

69.    The defendants' material representations about the safety of investors' funds to be held and remain in the escrow account were false and misleading.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph to the extent that they relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and therefore they are denied by Hering.**

70.   Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs made false and misleading statements of material fact in conversations with investors and in the offering materials that investor's funds were to be used to acquire a SBLC.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

71.   Contrary to their representations, Geivelis, Worldwide Funding, Butts Anisky, Express Commercial, Banner, and Baggs did not use investors' funds to pay bank charges to acquire a SBLC.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

72.   Geivelis and Butts knew their statements about the use of investors' funds were material, false and misleading. Geivelis' knowledge is attributed to Worldwide Funding. They failed to disclose that they misappropriated all of an investor's funds to pay

themselves and the sales agents, and that no funds were used to pay bank charges to acquire SBLCs.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

73.    After an investor deposited funds into Butts' trust account, Butts immediately disbursed the funds as compensation to the defendants. He distributed approximately 45% to the Worldwide Chase account for the benefit of Geivelis, 10% to the broker, and 45% to Butts' personal accounts. Butts knew that he used at least 45% of investors' funds for his own personal benefit and that none of the funds he received were used to pay bank charges to acquire a SBLC as represented to investors.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph to the extent that they relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

74.    As the sole manager and owner of Worldwide Funding and signatory on the Worldwide Chase account, Geivelis knew that he used at least 45% of investors' funds for his personal benefit and that none of the funds were used to pay bank charges to acquire a SBLC as represented to investors. Geivelis used investor funds for numerous personal expenses, including gambling and travel.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

75.     Butts and Geivelis knew that the approximately 10% of investors' funds paid to the brokers was not for payment of bank charges to acquire SBLCs as represented to investors.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

76.     Anisky, Express Commercial, Banner and Baggs knew their statements about the use of an investor's funds were false because they received approximately 10% of the investor's funds, contrary to their representation that the funds would be used to acquire a SBLC. Their representations that as intermediaries they received a commission after the transaction and trading was completed were also false because they were compensated out of investors' funds before any SBLC was ever purchased.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

77.    During at least one of the conference calls with investors, Geivelis and Butts represented that Geivelis had completed thirty SBLC transactions. Geivelis knew that statement was false as he had completed no transactions. Butts knew, or was reckless in not knowing, the statement was false because the agreements with investors provided that any earnings from the trading program were to be paid into his attorney trust account for distribution to the investors, and that never happened.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

78.    Anisky is engaged in the business of inducing investors or attempting to induce investors to purchase securities, including the investment contracts offered by Worldwide Funding.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

79.    From at least June 2012 through October 2012, Anisky offered investments in the Worldwide Funding trading program through emails sent over the Internet and telephone calls.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or**

**information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

80.      Anisky offered an investment of $60,000 to obtain a $10,000,000 non-recourse loan through Worldwide Funding trading program. Among other things, he represented the $60,000 was used to cover the costs to acquire the banking instrument and that the $60,000 deposit was held under an Escrow Agreement with Butts PA, which was fully insured and refundable. He represented the escrowed funds are released after confirmation of the acquisition of the instrument from the issuing bank. He represented the process took 15 international banking days until the investor received the funds. While the documents he sent investors disclosed that, as the intermediary in the transaction, he would receive 10% of project net funding and 10% of net trading profits for one year, he failed to disclose the material fact that he received approximately 10% of the investor's funds immediately from the escrow account.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

81.      If an investor was interested in the Worldwide Funding trading program, Anisky arranged for a telephone conference call among Geivelis, Butts, Anisky and the investor.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

82.     Anisky offered the investment to at least ten investors who invested approximately $960,000.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

83.     Butts paid Anisky approximately 9% of the investor's funds received into the Butts PA trust account. In total, Butts paid approximately $86,768 to PW Consulting for the benefit of Anisky.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

84.     Anisky obtained investors' funds by means of false and misleading statements or omissions of material fact made about the investment in the Worldwide Funding trading program.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or**

**information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

85.     Banner and Express Commercial are engaged in the business of inducing investors or attempting to induce investors to purchase securities, including the investment contracts offered by Worldwide Funding.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

86.     From at least January 2013 through August 2013, Banner and Express Commercial offered investment contracts in Worldwide Funding's trading program which he named the "FA27" program.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**


87.     Banner, as the managing member of Express Commercial, sent emails, newsletters, posted information on the Express Commercial's website at www.expcomcap.com and spoke with investors by telephone about an investment in the Worldwide Funding's FA27 Project Funding, Infrastructure Humanitarian & Environmental Program.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

88.   Banner and Express Commercial made false and misleading statements of material fact in their emails and newsletters sent to investors since January 2013, among other things, that in the FA27 program:

> "The provider group [Worldwide Funding and Geivelis] purchases the ten (IOM) SBLCs from top major banks for cash in the name of the client. For one year the client controls this SBLC for the monetization & trade portion of this Infrastructure Humanitarian & Environmental Program (1HEP). The escrow agent for the FA27 IHEP program is a practicing attorney in Miami, Florida for over 40 years. The attorney is a partner and managing director of the trading organization & the FA27 IHEP funding entity. The trader has 23+ years of experience & is licensed with 27 banks worldwide to do the lines of credit for the trade." The SBLC is monetization at 80% providing net proceeds to the client of $6,660,000 Euros. The SBLC is "leveraged up 3 to 5 times which maximizes the trading amount to a minimum of 30M to 50M trade because the IOM SBLC is cash backed. The trade is normally 40 weeks. The trader's contract states a 50% / 50% split with the client. The Trader Contract will state the historical returns. Each cash-backed 10M SBLC has a hard cost of 90K deposited into the Florida attorney's insured Escrow Account. All other client's costs are charged to the monetization & trade funding returns. The 90K is paid after your project is approved & contracts arc offered to the client."

Banner outlined the procedures to get started included to sign and return to the sender an Express Commercial NCND; call or email the sender to answer questions about the IHEP program; request a FA27 client information form and executive summary and; set up a conference call with the Escrow attorney, Funder and the

sender. Banner disclosed he received co-broker's fees of "2.5% of client's 6.6M euros" after the SBLC was monetized and "2.5% of clients net 40 week PPP trade paid to broker." But he did not disclose he immediately received approximately 10% of investor's funds before the SBLC was acquired.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

89.   Banner identified the provider of the FA27 program as Worldwide Funding and Frank Anastasio; the attorney and escrow agent as Bernard H. Butts Jr.; and that Butts is the partner of Anastasio the managing director of the trading organization.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

90.   When an investor contacted Banner about the FA27 program, Banner arranged for a conference call among the investor, Geivelis, Butts, and Banner. Banner and Express Commercial offered the investment to at least ten investors who invested approximately $919,955.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or**

**information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

91.     Butts immediately paid Banner approximately 10% the investor's funds received into the Butts PA trust account. In total, Butts paid approximately $91,250 to Express Commercial for the benefit of Banner.

**Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

92.     Banner obtained investors' funds by means of false and misleading statements or omissions of material fact made about the investment in the Worldwide Funding trading program.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

93.     Baggs is engaged in the business of inducing investors or attempting to induce investors to purchase securities, including the investment contracts offered by Worldwide Funding.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

94.     In or about January 2013, Baggs learned of the Worldwide Funding's investment program from Banner. Banner told Baggs that an investment cost $80,000 and was completely safe because the funds were paid into Butts' attorney trust account in Miami, Florida. Banner told Baggs the initial payout was approximately $6,600,000 to the investor and thereafter weekly payments of between $2 million and $4 million would accrue for approximately 40 weeks. Banner said that Anastasio (Geivelis) and Butts were partners; Anastasio (Geivelis) started the program and made it work.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

95.     Baggs had several telephone calls and emails with Butts, Geivelis and Banner who each confirmed the details of the program. Geivelis, Butts and Banner told Baggs that the initial monies from the customer would be used to procure a E10 million SBLC from a major world class bank. That that letter of credit would be leveraged up to €30 million to €50 million and those funds would be used to go into a trading program. Investors' returns were to be generated from trading profits. All three assured Baggs that the investors' money was safe in the attorney's trust account and there would be no losses.

**Answer: Denied. Hering denies the allegations contained within this paragraph as they do not relate to her. Hering is without knowledge or**

information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by **Hering.**

96.     Banner and Baggs agreed to split any commissions from Baggs introducing investors to the program.

**Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

97.     In or about February 5, 2013, Baggs began offering the Worldwide Funding investment program to investors through emails and telephone calls with investors repeating the misrepresentations made to him by Geivelis, Butts and Banner.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

98.     Baggs did not have any reasonable basis on which to believe that the Worldwide Funding trading program described by Geivelis, Butts, and Banner existed.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

99.     Baggs offered the Worldwide Funding investment to at least one investor who invested $80,000, which was wired to Butts PA on or about February 19, 2013.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

100.     Butts paid Baggs and Banner approximately 10% of the investor's funds received into the Butts PA trust account. Butts wired $4,970 to Baggs' entity Capital Express Corporation and $4,970 to Banner's entity Express Commercial.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

101.     Geivelis, Butts, Anisky, Banner, Express Commercial and Baggs told most investors that they would receive the initial proceeds from the €10,000,000 Euro loan within fifteen to forty-five working days.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

102.     After the original investments were made and continuing through at least August 9, 2013, Worldwide Funding, Geivelis and Butts made false statements to investors to lull them into remaining in the investment program because payment of

the claimed extraordinary returns on their investments were imminent, but that issues with the various financial institutions were causing delays.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

103.   For example, on October 30, 2012, Worldwide Funding and Geivelis sent a letter to "all participants in the project funding humanitarian program" providing an update falsely representing "the new exit buyer is contracted... and they have provided the necessary bank confirmations.. . . At this time ... the 2 parties are completing the final paperwork and are preparing the trade to the final banking stage prior to disbursing to the first 3 waives of project owners. We will have another update tomorrow as to where the payouts stand. . . . We understand tune is of the essence and it is unfortunate that after all this time our exit buyer backed out last minute. . . . [F]unding for waive 1, 2, and 3 then waive 4 and 5 will go into disbursement state. The anticipated time frame would be 7-10 days from the day waive 3 is funded."

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

104.    On November 15, 2012, Worldwide Funding and Geivelis sent another letter to all participants falsely representing, "the first 4 wires were being cleared and . .. will be passed on to Bernard Butts P.A. We cannot advise how long this process is, however from experience of domestic transfers usually it is a very quick turn around."

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

105.    On December 19, 2012, Worldwide Funding and Geivelis sent another letter to all participants falsely representing, they had forwarded information to the bank for review which was 60% complete. "The draw request for funds will be completed once all files are approved. Once the bankers are complete we will sign the draw request and the Funds will be transferred accordingly to JP Morgan Chase WWF III account in which I will turn the funds around same day . ."

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

106.    Butts also sent various text messages to investors promising that payments were imminent.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or**

information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.

107.   For example, on March 25, 2013, Butts sent a text message falsely stating, "Fincen has released Wells and they have no restrictions on transferring funds to Chase and Frank. It's not if but when. . .. Raj and his time estimate is as *he* outlined. As soon as the funds are transferred *he* will communicate to all."

**Answer: Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

108.   On July 3, 2013, Geivelis emailed an investor falsely stating the investor's funding was scheduled for release around July 12, 2013.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

109.   On July 9, 2013, Geivelis emailed an investor falsely stating, "I was not authorized to release your payment yet but I was told end of last week that we will process it in the next couple days and payment will be made to your ... account"

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

110.    On August 1, 2013, Geivelis emailed an investor falsely stating, "You will be funded no later than August 12, 2013."

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

111.    Geivelis and Butts continued to lull investors through August 2013.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

## VII. BROKER AND DEALER

112.    From at least April 2012, Geivelis, Butts, Anisky, Banner, Express Commercial and Baggs engaged in the business of inducing or attempting to induce the purchase or sale of the securities.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

113.    Geivelis, Butts, Anisky, Banner, Express Commercial and Baggs each used interstate commerce, sending emails and speaking by telephone with investors about the Worldwide Funding trading program.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

114.   Geivelis and Butts were partners in the offer and sale of the investment contracts of Worldwide Funding. Each received transaction-based compensation of approximately 45% of the money that investors' invested with Worldwide Funding.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

115.   Anisky; Banner and Express Commercial; and Baggs offered the investment contracts of Worldwide Funding. Each received transaction-based compensation of approximately 10% of an investor's funds, with Banner and Baggs sharing the 10% for the investor that Baggs introduced.

**Answer:   Denied.   Hering denies the allegations contained within this paragraph as they do not relate to her.   Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

116.   Geivelis, Butts, Anisky, Banner, Express Commercial and Baggs were not registered as brokers, or associated with a broker-dealer registered with the SEC while they induced or attempted to induce the purchase or sale of securities.

**Answer:  Denied.  Hering denies the allegations contained within this paragraph as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

## FIRST CLAIM FOR RELIEF

### Fraud — Violations of Securities Act Section 17(a)
### [15 U.S.C. § 77q(a)]

117.    The SEC realleges paragraphs 1 through 116 above.

**Answer:  Hering hereby incorporates and repeats her answers to paragraphs 1-116 as if restated in full.**

118.    Defendants Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs directly and indirectly, with scienter, in the offer or sale of securities, by use of the means or instruments of transportation or communication in interstate commerce or by use of the mails, employed a device, scheme, or artifice to defraud; obtained money or property by means of untrue statements of material fact or omissions to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in transactions, practices, or courses of business which have been or are operating as a fraud or deceit upon the purchasers of the securities.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact, Hering denies the allegations as they do not relate to her.  Hering is without knowledge or**

**information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

119.   Defendants Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs violated and unless restrained and enjoined will in the future violate Securities Act Section 17(a)(1), (2) and (3).

**Answer: Denied. The allegations contained within this paragraph state a legal conclusion and therefore do not require a response. To the extent that this paragraph contains allegations of fact, Hering denies the allegations as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

120.   Alternatively, Butts knowingly aided and abetted the violations by Worldwide Funding and Geivelis of Securities Act Section 17(a)(1), (2) and (3). He provided substantial assistance in their commission of the primary violation by acting as the escrow agent to receive investors' funds, distributing funds to the defendants and relief defendants although no SBLCs were acquired, and he and the other defendants were not to be compensated until after the trading program was complete. He also lulled investors into not terminating their investments, reassuring them that their returns were imminent.

**Answer: Denied. The allegations contained within this paragraph state a legal conclusion and therefore do not require a response. To the extent that this paragraph contains allegations of fact, Hering denies the allegations as**

they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.

## SECOND CLAIM FOR RELIEF

### FRAUD — VIOLATIONS OF EXCHANGE ACT SECTION 10(b) AND RULE 10b-5 [15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5]

121.    The SEC realleges paragraphs 1 through 116 above.

**Answer:   Hering hereby incorporates and repeats her answers to paragraphs 1-116 as if restated in full.**

122.    Defendants Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs, directly or indirectly, with scienter, in connection with the purchase or sale of securities, by the use of means or instrumentalities of interstate commerce, the mails, or any facility of a national securities exchange, employed devices, schemes, or artifices to defraud; made untrue statements of material fact or omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; or engaged in acts, practices, or courses of business which operated or would operate as a fraud or deceit upon any person; in violation of Exchange Act Section 10(b) and Rule 10b-5.

**Answer: Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact,  Hering denies the allegations as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

123.    Defendants Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs violated and unless restrained and enjoined will in the future violate Exchange Act Section 10(b) and Rule 10b-5.

**Answer: Denied. The allegations contained within this paragraph state a legal conclusion and therefore do not require a response. To the extent that this paragraph contains allegations of fact, Hering denies the allegations as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

124.    Alternatively, Butts knowingly aided and abetted the violations 'by Worldwide Funding and Geivelis of Exchange Act Section 10(b) and Rule 10b-5. He provided substantial assistance in their commission of the primary violation by acting as the escrow agent to receive investors' funds, distributing funds to the defendants and relief defendants although no SBLCs were acquired, and he and the other defendants were not to be compensated until after the trading program was complete. He also lulled investors into not terminating their investments, reassuring them that their returns were imminent.

**Answer: Denied. The allegations contained within this paragraph state a legal conclusion and therefore do not require a response. To the extent that this paragraph contains allegations of fact, Hering denies the allegations as they do not relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

## THIRD CLAIM FOR RELIEF

**OFFERS AND SALES OF UNREGISTERED SECURITIES -
VIOLATIONS OF SECURITIES ACT SECTIONS 5(a) AND 5(c)
[15 U.S.C. §§ 77e(a) and 77e(c)]**

125.    The SEC realleges paragraphs 1 through 116 above.

**Answer:   Hering hereby incorporates and repeats her answers to paragraphs 1-116 as if restated in full.**

126.    Defendants Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs, directly or indirectly, have made use of the means or instruments of transportation or communication in interstate commerce or of the mails to sell securities, when no registration statement was in effect with the Commission as to such securities, and have made use of the means or instruments of transportation or communication in interstate commerce or of the mails to offer to sell such securities when no registration statement had been filed with the Commission as to such securities.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact,  Hering denies the allegations as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

127.    There were no applicable exemptions from registration, and Defendants Worldwide Funding, Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs

therefore violated, and unless restrained and enjoined will in the future violate Sections 5(a) and 5(c) of the Securities Act.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact,  Hering denies the allegations as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

## FOURTH CLAIM FOR RELIEF

### OFFERS AND SALES OF SECURITIES BY
### AN UNREGISTERED BROKER-DEALER
### VIOLATIONS OF EXCHANGE ACT SECTION 15(a)
### 115 U.S.C. § 78o(a)J

129.    The SEC realleges paragraphs 1 through 116 above.

**Answer:  Hering hereby incorporates and repeats her answer to paragraphs 1-116 as if restated in full.**

130.    Defendants Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs, while engaged in the business of effecting transactions in securities for the account of others, made use of the mails or the means or instrumentalities of interstate commerce to effect transactions in, or to induce or attempt to induce the purchase or sale of, a security without being registered in accordance with Section 15(a) of the Exchange Act.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact,  Hering denies the allegations as**

**they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

131.    Defendants Geivelis, Butts, Anisky, Express Commercial, Banner, and Baggs, have violated, and unless restrained and enjoined will in the future violate Section 15(a) of the Exchange Act.

**Answer:  Denied.  The allegations contained within this paragraph state a legal conclusion and therefore do not require a response.  To the extent that this paragraph contains allegations of fact,  Hering denies the allegations as they do not relate to her.  Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and they are therefore denied by Hering.**

### FIFTH CLAIM FOR RELIEF
### UNJUST ENRICHMENT OF RELIEF DEFENDANTS

132.    The SEC realleges paragraphs 1 through 116 above.

**Answer:    Hering hereby incorporates and repeats her answers to paragraphs 1-116 as if restated in full.**

133.    Relief defendants Bernard H. Butts Jr. PA, Butts Holding Corporation, Global Worldwide Funding Ventures, Inc., Margaret A. Hering, and PW Consulting Group LLC, each obtained funds as part, and in furtherance of the securities violations alleged above without a legitimate claim to those funds, and under those circumstances it is not just, equitable or conscionable for them to retain the funds. Bernard H. Butts Jr.

PA, Butts Holding Corporation, Global Worldwide Funding Ventures, Inc., Margaret A. Hering, and PW Consulting Group Inc. were unjustly enriched.

**Answer: Denied. The allegations contained within this paragraph state a legal conclusion and therefore do not require a response. To the extent that this paragraph contains allegations of fact, Hering denies the allegations that relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and therefore they are denied by Hering.**

134.    Bernard H. Butts Jr. PA, Butts Holding Corporation, Global Worldwide Funding Ventures, Inc., Margaret A. Hering, and PW Consulting Group Inc. should each be ordered to disgorge the funds they received as a result of the defendants' violations of the federal securities laws.

**Answer: Denied. The allegations contained within this paragraph state a legal conclusion and therefore do not require a response. To the extent that this paragraph contains allegations of fact, Hering denies the allegations that relate to her. Hering is without knowledge or information sufficient to form a belief as to the truth of the allegations contained within this paragraph as to other parties, and therefore they are denied by Hering.**

Respectfully Submitted,

 s/ Marc J. Weinstein
Marc J. Weinstein, Esq.
Florida Bar No. 151246
Robert V. Cornish, Jr., Esq. (*pro hac vice*)
DILWORTH PAXSON LLP
1500 Market Street, Suite 3500E
Philadelphia, PA  19102
Tel: (215) 575-7183
Fax: (215) 575-7200
Email:  mweinstein@dilworthlaw.com

*Counsel for Margaret A. Hering*

## CERTIFICATE OF SERVICE

The undersigned affirms that a copy of the foregoing ANSWER OF MARGARET A. HERING TO PLAINTIFF'S COMPLAINT was served electronically upon the following parties and/or their counsel in this matter and filed with the Court via the ECF system:

David Joffe, Esq.
Sabadell Financial Center
1111 Brickell Avenue, Suite 1100
Miami, FL 33131
davidjjoffe@aol.com
*Counsel for Fotios Geivelis*

Christopher Grillo, Esq.
1 E. Broward Blvd
Fort Lauderdale, FL 33301
Chrisgrilloatty@aol.com
*Counsel for Sidney Banner*

James Baggs
c/o Irving M. Einhorn, Esq.
1710 10th Street
Manhattan Beach, CA 90266
ime@einhornlaw.com

Douglas Anisky (*pro se*)
2478 Southridge Rd.
Delray Beach, FL 33444
warriortrust@aol.com

Leslie J. Hughes, Esq.
Securities and Exchange Commission
1801 California St. Suite 1500
Denver, CO 80206
HughesLJ@sec.gov
*Counsel for Plaintiff SEC*

Dated:   October 18, 2013

                                              s/ Marc J. Weinstein_____
                                              Marc J. Weinstein